UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KEVIN L. GREENE,

        Plaintiff,

v.                                  Case No. 3:22-cv-799-BJD-PDB

RICKY D. DIXON, et al.,

        Defendants.
_____

**ORDER**

    Plaintiff, Kevin L. Greene, an inmate of the Florida penal system, is proceeding through counsel who is specially appearing on Greene's behalf (Doc. 7). On July 22, 2022, Greene filed a complaint for the violation of civil rights (Doc. 1; Compl.), and then moved to proceed *in forma pauperis* (Doc. 5), which the Court granted (Doc. 8). Because Greene is proceeding as a pauper, the Court has an obligation under the Prison Litigation Reform Act (PLRA) to screen his complaint. *See* 28 U.S.C. § 1915(e)(2)(B). The relevant provision provides, "[a] court shall dismiss [a] case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." *Id.*

    Since the PLRA's "failure-to-state-a-claim" language mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts apply

the same standard. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). *See also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555).

In his complaint, Greene complains about medical treatment he received while in the custody of the Florida Department of Corrections (FDOC) for a skin condition. *See* Compl. ¶¶ 1-3. He names three Defendants: Ricky Dixon, in his official capacity as the Secretary of the FDOC; Centurion of Florida, LLC, the medical services company under contract with the FDOC to provide treatment for inmates; and Kathryn Leveen, an APRN (advanced practice registered nurse). *Id.* ¶¶ 9-11. Greene acknowledges he received treatment at two correctional institutions—the Reception and Medical Center (RMC), where Defendant Nurse Leveen works, and Desoto Annex Correctional Institution (Desoto)—and he chronicles that treatment in his complaint. *See generally id.*

Greene explains he was seen by a provider either at RMC or Desoto on an unknown date in July 2021 (at Desoto); an unknown date in August 2021 (at Desoto); October 15, 2021 (at RMC by Nurse Leveen, who diagnosed

2

Eczema and prescribed medications/lotions); November 19, 2021 (at RMC by Nurse Leveen, who ordered a biopsy); November 23, 2021 (biopsy at RMC); December 9, 2021 (at Desoto); an unknown date in December 2021 (at Desoto); January 12, 2022 (at RMC by Nurse Leveen, who sent photos to a dermatologist and diagnosed Scabies);[1] January 17, 2022 (at RMC by Nurse Leveen, who changed one of Greene's prescriptions); an unknown date in February 2022 (at RMC by Nurse Leveen, who prescribed a cream that was contraindicated for patients with glaucoma, an illness Greene has); and an unknown date in February 2022 (at RMC by Nurse Leveen, who prescribed medications (Clobetasol and Triamcinolone) based on a new suspected diagnosis (Neurodermatitis) and said she would consider a referral to a dermatologist "if the medication did not work"). *Id.* ¶¶ 14-15, 18, 20-21, 25, 29, 31, 36-37, 40.

Greene alleges the medications Nurse Leveen last prescribed (Clobetasol and Triamcinolone) were unavailable when he went to the "Keep on Person" window on March 1, 2022. *Id.* ¶ 41. He was told "no prescription had been written." *Id.* Greene does not allege if or when he received the medications, but

---

[1] Greene alleges Nurse Leveen sent photos to a dermatologist on January 12, 2022, but he does not say whether he treated with Nurse Leveen on that day. *See* Compl. ¶ 29. At about that time, he also was under the care of another APRN named Stump. He filed a grievance on January 14, 2022, complaining that he had not received a medication Nurse Stump had ordered for him. *Id.* ¶ 30.

3

it appears he ultimately did. He alleges that on April 22, 2022, he wrote a grievance complaining about his medical care, noting that "if [Nurse] Leveen did not write [him] a referral to a dermatologist . . . he would move forward with litigation." *Id.* ¶ 46. He does not allege he also complained that he still had not received his medications. *Id.*

Greene alleges he has been "erroneously diagnosed more than seven (7) times," and none of the prescriptions have resolved his skin condition. *Id.* ¶ 48. He raises these claims: deliberate indifference to serious medical needs under 42 U.S.C. § 1983 and 42 U.S.C. § 1988[2] (counts one and two), *id.* ¶¶ 49-50; and intentional or negligent infliction of emotional distress (count three), *id.* ¶ 51. He seeks declaratory and injunctive relief as well as damages. *Id.* (pp. 14-15).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under the color of state law deprived him of a right secured under the United States Constitution or federal law. 42 U.S.C. § 1983. A claim for deliberate indifference to a serious illness or injury is cognizable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). *See also Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (identifying the elements of a

---

[2] Section 1988 is purely procedural; "[it] does not create an independent cause of action for deprivation of constitutional rights." *McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1388 n.1 (11th Cir. 1981).

4

deliberate indifference claim: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury"). A medical provider demonstrates deliberate indifference, for example, when he or she knows an inmate needs medical care but intentionally refuses to provide that care. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985).

However, "[when] a prisoner has received ... medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (1st Cir. 1981) (second alteration in original)). *See also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.").

To state a deliberate indifference claim under the Eighth Amendment, a plaintiff must do more than allege the care he received was "subpar or different from what [he] want[ed]." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1277 (11th Cir. 2020). For instance, negligent misdiagnosis is not actionable as deliberate indifference. *Estelle*, 429 U.S. at 105-06 ("[A] complaint that a

5

physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). The Eleventh Circuit has identified limited circumstances in which a prisoner may demonstrate deliberate indifference when he has received some medical treatment: when the treatment is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness"; when a provider takes an easier and less efficacious course of treatment"; or when the treatment "is so cursory as to amount to no treatment at all." *Adams*, 61 F.3d at 1544. Additionally, delaying necessary medical care can amount to deliberate indifference, but "the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

Even if a plaintiff were to allege a medical provider had been deliberately indifferent to his serious medical needs, he may not necessarily proceed on a separate claim against the medical provider's supervisor or employer. That is because liability under § 1983 may not be based on a theory of vicarious liability. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). In other words, § 1983 liability must be based on something more than "the mere fact that [a supervisor or municipality] employed [an] offending official." *City*

6

*of Oklahoma City v. Tuttle*, 471 U.S. 808, 810 (1985). A claim against a supervisor may proceed only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). A causal connection can be established when a supervisor knows a subordinate will act unlawfully or adopts a policy that results in deliberate indifference to an inmate's constitutional rights. *Id. See also Cottone*, 326 F.3d at 1360.

The Eleventh Circuit has noted, "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Henley v. Payne*, 945 F.3d 1320, 1331 (11th Cir. 2019) (quoting *Braddy v. Fla. Dep't of Lab. Emp't Sec.*, 133 F.3d 797, 802 (11th Cir. 1998) (first alteration in original)). Similarly, to proceed against a municipality, including a private company under contract with a municipality,[3] a plaintiff must allege the existence of a "custom or policy that constituted deliberate indifference to [a] constitutional right" and that caused a constitutional violation. *Moody v. City of Delray Beach*, 609 F. App'x 966, 967

---

[3] "[W]hen a private entity ... contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state and becomes the functional equivalent of the municipality under [§] 1983." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting with second alteration *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997)).

(11th Cir. 2015) (citing *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004)). *See also Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that § 1983 applies to municipalities but liability arises only when a "municipal policy of some nature cause[s] a constitutional tort").

When proceeding on an unlawful-policy theory, a plaintiff must "point[] to multiple incidents or multiple reports of prior misconduct by a particular employee," *Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022), because a "municipal policy must be 'the moving force of the constitutional violation,'" *Tuttle*, 471 U.S. at 820. Thus, a plaintiff's reference to a "single incident of a constitutional violation is insufficient to [allege] a policy or custom even when the incident involves several employees." *Craig*, 643 F.3d at 1311; *Ingram*, 30 F.4th at 1254. *See also Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1329-30 (11th Cir. 2015) (holding the plaintiff's claim against the sheriff's office was properly dismissed because the claim arose out of the plaintiff's own experiences; he did not allege a pattern of similar, prior violations).

Moreover, conclusory allegations of a policy or custom will not suffice. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). A plaintiff must do more than use certain "buzzwords," such as "policy" or "custom" to state a plausible claim for relief against a supervisor or municipality. *See, e.g.*,

8

*Doe v. Univ. of Ala. in Huntsville*, 177 F. Supp. 3d 1380, 1398 (N.D. Ala. 2016) ("Merely mouthing the buzzwords like 'pattern and practice' (or, as in this case 'policies and practices') in a complaint does not satisfy minimum pleading requirements because it represents a legal conclusion, and such conclusory labels are not credited for Rule 12(b)(6) purposes.").

Greene's complaint is subject to dismissal under the PLRA because he fails to state a plausible claim for relief under § 1983. *See Iqbal*, 556 U.S. at 678. First, Greene fails to state a deliberate indifference claim against Nurse Leveen. He does not allege Nurse Leveen failed to provide care for him or ignored a serious medical need. On the contrary, he chronicles months of care Nurse Leveen (and others) provided for his skin condition and faults her for misdiagnosis, minor delays in prescribing medications, or prescribing a medication contraindicated for patients with glaucoma.[4] These allegations suggest negligence, not deliberate indifference. *See Estelle*, 429 U.S. at 107.

The last time Greene allegedly treated with Nurse Leveen, in February 2022, she agreed that he was not suffering from Eczema or Scabies but Neurodermatitis, and she prescribed new medications. *See* Compl. ¶ 40. Before that, Nurse Leveen ordered a biopsy and, when initial treatments proved

---

[4] Greene does not allege he suffered any adverse consequences or sustained an injury by being prescribed a medication he should not have been taking because of his glaucoma. In fact, he alleges he knew the medication prescribed was contraindicated for him, so he "discarded [it] without use." *See* Compl. ¶ 37.

9

ineffective, she consulted a dermatologist to whom she sent pictures of Greene's skin. *Id.* ¶¶ 20, 29. Accepting as true Greene's allegations, he does not allege facts permitting the reasonable inference that Nurse Leveen provided medical care "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

Nor does Greene allege facts suggesting Nurse Leveen provided care so cursory as to amount to no treatment at all. As summarized, Greene received extensive treatment at two correctional institutions. *See* Compl. ¶¶ 13-15, 22-26. He even recognizes this, alleging he received "numerous diagnoses and treatments." *Id.* ¶ 3. When Greene was housed at RMC, Nurse Leveen evaluated him and prescribed medications (including lotions) for his skin condition. *Id.* ¶¶ 18, 20, 29, 31, 40. She also ordered a biopsy, consulted a dermatologist, and adjusted medications when they proved ineffective. *Id.* ¶¶ 21, 29, 31.

Greene's sole complaint about his medical care appears to be that he has not been referred "to a dermatologist for a more definitive specialized diagnosis and treatment." *Id.* ¶ 3. Indeed, the injunctive relief he seeks is to be referred to a dermatologist and for the prison medical providers to "abide by the dermatologist's recommendation(s)." *Id.* (p. 14). As a prisoner, Greene is not entitled to a provider of his choice or to mandate a particular course of

10

treatment. *See Harris*, 941 F.2d at 1505 ("[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim [for deliberate indifference]."). That Nurse Leveen chose not to refer Greene to a dermatologist (at least not as of February 2022) does not mean she is or has been deliberately indifferent to his skin condition. In short, Greene does not allege facts permitting the reasonable inference that Nurse Leveen was deliberately indifferent to his serious medical needs.[5]

Because Greene fails to state a plausible claim against Nurse Leveen, his claims against Centurion and the FDOC (Secretary Inch)[6] necessarily fail. *See Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009 (citing *Hicks v. Moore*, 422 F.3d 1246, 1253 (11th Cir. 2005)). In any case, however, Greene's allegation that Centurion and the FDOC had a "policy and practice of refusing to refer [Greene] to a dermatologist" to reduce costs, *see* Compl. ¶¶ 2, 4, fails to state a plausible claim under the rigorous supervisory liability standard. Not only are Greene's allegations conclusory, but his "policy" allegations relate solely to the medical care he received (or did not receive) for

---

[5] For purposes of its PLRA review, the Court accepts without deciding that Greene's skin condition constitutes a serious medical need.

[6] "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55.

11

over about eight or nine months; he does not allege there were "multiple incidents or multiple reports of prior misconduct" involving Nurse Leveen or other medical providers under circumstances like those he experienced. *See Ingram*, 30 F.4th at 1254.

With the dismissal of Greene's federal claims, the Court declines to exercise supplemental jurisdiction over Greene's state-law claim for intentional or negligent infliction of emotional distress. *See* 28 U.S.C. § 1367(c)(3). *See also Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law."). Thus, the Court will dismiss Greene's complaint without prejudice subject to his right to file an amended complaint if he so chooses.

Accordingly, it is

**ORDERED:**

1. Plaintiff's complaint (Doc. 1) is **DISMISSED without prejudice**.

2. If Plaintiff wants to proceed, he must submit an amended complaint by **October 12, 2022**.

3. If Plaintiff does not submit an amended complaint by **October 12, 2022**, this action will be dismissed without prejudice.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of September 2022.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　BRIAN J. DAVIS
　　　　　　　　　　　　　　　　　United States District Judge

Jax-6
c:　　Counsel of Record